UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,

           Plaintiff,

v.

Derran Reebel,

           Defendant.

Case No. 3:22-cr-516

MEMORANDUM OPINION
AND ORDER

## I.  INTRODUCTION

Defendant Derran Reebel seeks to suppress evidence seized pursuant to a search warrant and during a search of his residence. (Doc. No. 17).  Reebel also requested a hearing on his motion.  The government filed a brief in opposition to the motion, (Doc. No. 19), and Reebel filed a brief in reply.  (Doc. No. 21).  For the reasons stated below, I deny Reebel's request for a hearing and his motion.

## II.  BACKGROUND

On August 9, 2022, the husband of Reebel's ex-wife (the "Complainant"),[1] contacted Federal Bureau of Investigation ("FBI") Special Agent Matthew Cromly to report that he had learned Reebel allegedly engaged in sexually explicit online and text message conversations with

---

[1] The search warrant affidavit refers to this individual both by his initials "J.P." and as the "Complainant."  (Doc. No. 17-1 at 24).  Reebel's ex-wife's initials also are "J.P."  (*Id.*).  To reduce confusion, I will refer to the husband of Reebel's ex-wife as the Complainant and Reebel's ex-wife as his ex-wife.

purported 14- and 15-year-old girls in which Reebel discussed plans to meet with the minor girls for sex. (Doc. No. 17-1 at 24-27). The purported 14-year-old girl ("Jordyn") and the purported 15-year-old girl ("Summer") in fact were fictional personas created by "Caught and Exposed 419", a Facebook account associated with an organization made up of a group of individuals who seek to "spread[] awareness of online child predators." (*Id.* at 24).

Caught and Exposed 419 provided to the Complainant pictures and chat logs between a male participant (allegedly Reebel) and the two fictional minor personas. Agent Cromly reviewed this information and compared the pictures sent by the male participant with Reebel's most recent Bureau of Motor Vehicles photograph, before concluding Reebel appeared to be the man depicted in the photographs provided by Caught and Exposed 419. (*Id.* at 24-25). Agent Cromly later interviewed M.B., the "founder [of] and primary individual" involved in Caught and Exposed 419. (*Id.* at 34). M.B. stated he was the individual communicating with Reebel as Jordyn and Summer and provided Agent Cromly with "evidence . . . of detailed knowledge" of the chats with Reebel. (*Id.*).

Complainant also told Agent Cromly that Reebel had been fired from his job working for a local optometrist, after the mother of a 17-year-old patient provided the optometrist with screenshots of messages Reebel sent to her minor daughter. (*Id.* at 29). Agent Cromly spoke with the optometrist, who confirmed he fired Reebel for contacting the minor patient. (*Id.*). Agent Cromly also reviewed a copy of a report from the Findlay, Ohio Police Department, which was prepared after the minor patient's mother filed a complaint with the police about Reebel's communications with her daughter. (*Id.* at 29-30).

Agent Cromly also reviewed FBI files concerning online communications in October 2020 between Reebel and an FBI Online Certified Employee ("OCE") purporting to be a 14-year-old girl. (*Id.* at 31-33). Agent Cromly compared the chat history between the OCE and Reebel and:

> noted numerous similarities in the language used by . . . REEBEL in the chats collected by FBI Detroit and those collected by ""Caught & Exposed 419": (1) the

2

>term "hun" frequently used in both, (2) stating a dislike for the use of condoms, (3) the terms "babygirl" and "skin on skin" used in both, (4) the request for verification photos from the minor children, specifically asking them to hold their pinky finger in the air while sticking out their tongue, (5) a desire for the minor female to feel his "cum" inside of her, etc.

(*Id.* at 33).

Agent Cromly subsequently interviewed the mother of 12-year-old and 10-year-old daughters, who had been guests at Reebel's home "approximately 10-15 times." (*Id.* at 34-35). The girls' mother, referred to in the search warrant affidavit as "C.A.," told Agent Cromly:

>her 12-year-old daughter informed her that REEBEL makes her very uncomfortable. REEBEL has insisted that she sit on his lap while they watch movies at his residence, and he excessively photographed her. In one instance, REEBEL walked in on "C.A.'s" 12[-]year-old daughter changing clothes moments after directing her to change her clothes behind a closed door. This minor child has also informed "C.A" that REEBEL spanked her 10-year-old sister, and then said that he was joking. Once "C.A" picked up her 12-year-old daughter from REEBEL's residence, and she was crying. The child informed her mom that REEBEL stated the child was "flirting" with him. "C.A" confronted REEBEL with this, and REEBEL said he was joking because the 12-year-old child had been acting overly "cuddly" and "flirty" with him.

(*Id.* at 34).

Agent Cromly sought a search warrant for Reebel's home based upon suspected violation of 18 U.S.C. § 2442(b), which prohibits any person from knowingly persuading, inducing, or enticing anyone under the age of 18 years to engage in any sexual activity for which a person can be charged with a criminal offense. Magistrate Judge Darrell A. Clay concluded probable cause existed and issued the search warrant on August 17, 2022. Agents executed the search warrant the following day and seized various pieces of evidence, including three electronic devices found to contain child pornography. Reebel subsequently was charged by indictment with one count of coercion and enticement in violation of § 2422(b) and one count of receipt and distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2). (Doc. No. 1).

3

### III. ANALYSIS

#### 1. REQUEST FOR *FRANKS* HEARING

Reebel has requested a hearing on his motion to suppress. (Doc. No. 17 at 1). Reebel moves to suppress the evidence obtained during the search of his residence based upon his contention that the warrant affidavit does not contain sufficient information to support a finding of probable cause. A defendant seeking to suppress evidence based only upon alleged deficiencies in a warrant affidavit is entitled to a *Franks* hearing if the defendant makes "a substantial showing that the affidavit in support of the warrant at issue included a false statement, made knowingly or intentionally, or with reckless disregard for the truth" and that the false or misleading statements were material to the probable cause determination. *United States v. Cruz*, 715 F. App'x 454, 456 (6th Cir. 2017) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

Reebel does not allege the warrant affidavit contains any false statements. His arguments that the affidavit (a) does not show sufficient corroboration of informant information, (b) contains stale information, and (c) relies significantly on allegations of legal behavior may be resolved exclusively through an examination of the search warrant and supporting affidavit. I conclude he is not entitled to a hearing.

#### 2. MOTION TO SUPPRESS

The Fourth Amendment generally requires law enforcement officers to obtain a warrant, based upon probable cause, before searching a location in which an individual has a reasonable expectation of privacy. *See, e.g., Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) ("When an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' we have held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause.") (further citation omitted).

Probable cause is the "reasonable grounds for belief" that evidence of a crime may be found in a certain place or location. *United Stated v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). "Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The principles underlying a court's probable cause review are familiar. The Fourth Amendment requires only that "the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236 (citation omitted) (alteration in original). An affidavit "should be reviewed in a commonsense – rather than a hypertechnical – manner, and the court should consider whether the totality of the circumstances supports a finding of probable cause, rather than engaging in line-by-line scrutiny." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004).

As I noted above, Reebel contends there was not probable cause to support the search because the search warrant "contained (1) biased information from sources with little to no independent corroboration; (2) stale evidence; and (3) allegations of legal conduct." (Doc. No. 17 at 2). These arguments are not persuasive.

First, the Sixth Circuit has "recognized that a statement from a witness known to the police is 'generally sufficient to establish probable cause without further corroboration because the legal consequences of lying to law enforcement officials tend to ensure reliability.'" *Lester v. Roberts*, 986 F.3d 599, 609 (6th Cir. 2021) (quoting *United States v. Hodge*, 714 F.3d 380, 385 (6th Cir. 2013)). *See also United States v. McCraven*, 401 F.3d 693, 698 (6th Cir. 2005) (recognizing Sixth Circuit precedent "make[s] it clear that independent corroboration of an informant's story is not necessary to a determination of probable cause").

5

Agent Cromly knew Complainant's identity, as well as the identities of at least five other individuals who provided statements or evidence used to support the search warrant application. Under Sixth Circuit precedent, this alone is sufficient to sustain Judge Clay's probable cause determination.

Reebel contends Agent Cromly "relied in large part upon information given him" by Complainant and Reebel's ex-wife "with little to no individual corroboration." (Doc. No. 17 at 3). But this argument ignores large sections of the search warrant affidavit in which Agent Cromly details his investigation – the steps he took, the people he talked to, the records he reviewed. Whether it was because he suspected Complainant and Reebel's ex-wife had "reason to act out of bias when it comes to Mr. Reebel," (Doc. No. 17 at 3), or for other reasons, the search warrant affidavit shows Agent Cromly did not simply take Complainant at his word that Reebel had engaged in conversations with purported minors in which Reebel discussed meeting the minors for sex.

Instead, Agent Cromly reviewed the chat messages and spoke with the individual who portrayed Jordyn and Summer during those conversations. The search warrant affidavit thus disproves Reebel's contention that Agent Cromly made no effort to "determine this information [regarding the chat conversations between Reebel, Jordyn, and Summer] was accurate, unaltered, and reliable." (Doc. No. 17 at 4). Agent Cromly interviewed the founder of Caught and Exposed 419, who confirmed he portrayed himself as Jordyn and Summer in conversations with Reebel and "provided evidence . . . of detailed knowledge" of the chat messages Complainant provided to Agent Cromly, as well as confirming he was the one who provided the chat messages to Complainant – chat messages which included pictures of Reebel, including one "using a cell phone in what [Reebel] confirmed in the chats was his home gym, in the photo." (Doc. No. 17-1 at 34).

Agent Cromly also determined Reebel previously had been charged in state court with Sexual Exploitation/Enticement, (Doc. No. 17-1 at 30-31), and engaged in chat messages with an FBI

6

OCE posing at as a 14-year-old girl in which Reebel discussed having sex with the purported minor. (*Id.* at 31-32). Further, Agent Cromly confirmed Complainant's allegation that Reebel had been fired from his job with an optometrist after engaging in sexually suggestive conversations with a minor patient. And he spoke with the mother of two minor girls who accused Reebel of touching them inappropriately and attempting to walk into a room where he knew one of the minor girls was changing her clothes. I conclude the search warrant affidavit contains sufficient information to establish there was probable cause to believe evidence of the crime of coercion and enticement would be found at Reebel's home.

Next, Reebel contends that the information in the search warrant affidavit discussing the October 2020 conversations with the FBI OCE is stale and cannot be relied upon as a basis for probable cause.[2] (Doc. No. 17 at 5-6; Doc. No. 21 at 2). But Agent Cromly did not seek the search warrant based upon the October 2020 chats. Instead, he referenced those conversations, which were "known to be attributed to Reebel," to note "numerous similarities in the language" used in the October 2020 chats and the Caught and Exposed 419 chats to show Reebel was likely the person who had been chatting with Jordyn and Summer. (Doc. No. 17-1 at 33). Further, "'[w]here recent information corroborates otherwise stale information, probable cause may be found.'" *United States v. Henson*, 848 F.2d 1374, 1381-82 (6th Cir. 1988) (quoting *Emery v. Holmes*, 824 F.2d 143, 149 (1st Cir. 1987)).

But even if I were to conclude the October 2020 information was stale and could not be considered, the remainder of the search warrant affidavit contains "a fair probability, given the

---

[2] In determining whether information in a search warrant affidavit is stale, a court considers "(1) the character of the crime (chance encounter in the night or regenerating conspiracy?), (2) the criminal (nomadic or entrenched?), (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?), and (4) the place to be searched (mere criminal forum of convenience or secure operational base?)." *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009) (citation omitted).

7

totality of the circumstances, that contraband or evidence of a crime will be found" in Reebel's home. *Loggins*, 777 F.2d at 338 (citation and internal quotation marks omitted).

Finally, Reebel contends the search warrant affidavit improperly relies upon allegations of legal conduct. (Doc. No. 17 at 6-7; Doc. No. 21 at 3). But, as I concluded above, the search warrant affidavit contains sufficient allegations of illegal conduct to establish probable cause to believe evidence of a crime would be found at Reebel's home.

Moreover, Agent Cromly's inclusion of allegations of legal conduct does not undermine the persuasiveness of the allegations of illegal conduct. That is particularly true with respect to the allegations that Reebel posted a message online offering to impregnate a "girl" and that he was fired from his optometry job for messaging a 17-year-old female patient. Reebel's pregnancy post included his picture as well as a screenname similar to the screenname used to chat with the OCE. (Doc. No. 17-1 at 27-28, 31-33). Thus, the allegations about this post provide additional data points connecting Reebel to the chats soliciting sex with a purported 14-year-old girl.

Further, the allegations regarding Reebel's optometry job and the reason for his termination corroborate Complainant's statements and support the reliability of Complainant's allegations about Reebel's illegal actions. *See, e.g., United States v. Houston*, 965 F. Supp. 2d 855, 906 (E.D. Tenn. 2013) ("It is enough, for purposes of assessing probable cause, that corroboration through other sources of information reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting the hearsay.") (quoting *Gates*, 462 U.S. at 244-45) (further citation and internal quotation marks omitted).

8

## IV. CONCLUSION

I conclude Judge Clay had a substantial basis upon which to find probable cause existed for the issuance of the search warrant. *See Gates*, 462 U.S. at 236. Therefore, and for the reasons set forth above, I deny Reebel's request for a hearing and his motion to suppress. (Doc. No. 17).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
