UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,

          Plaintiff,

   v.

Derran Reebel,

          Defendant.

Case No. 3:22-cr-516

MEMORANDUM OPINION
AND ORDER

## I.    INTRODUCTION

After a week-long trial, a jury found Defendant Derran Reebel guilty of attempted production of child pornography, in violation of 18 U.S.C. § 2251(a), and coercion or enticement of a minor, in violation of 18 U.S.C. § 2422(b). (Doc. No. 96).[1] After the close of the evidence, but before the jury's verdict, Reebel orally moved for a judgment of acquittal under Rule 29. (*See* non-document entry dated March 13, 2025). I reserved decision on the motion. (*See id.*). After the verdict, Reebel filed a written Rule 29 motion, (Doc. No. 102), and the government filed a brief in

---

[1] This was Reebel's second trial for offenses arising from the conduct for which the government charged him in the Superseding Indictment. (*See* Doc. No. 35). Reebel faced four charges in total: (1) attempted production of child pornography in violation of 18 U.S.C. § 2251(a), (2) coercion or enticement of a minor in violation of 18 U.S.C. § 2422(b), (3) receipt and distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2), and (4) possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(b). (*See id.*). Over the government's objection, I granted Reebel's motion to sever the attempted production and coercion or enticement counts (Counts 1 and 2) from the § 2252 counts (Counts 3 and 4). (*See* non-document order dated October 22, 2024). Reebel went to trial on the § 2252 charges, and a jury found him guilty of both on November 7, 2024. (*See* Doc. No. 70). Reebel's trial on the attempted production and coercion or enticement charges commenced four months later, on March 10, 2025. (*See* non-document order dated March 10, 2025).

opposition. (Doc. No. 109). Reebel did not file a brief in reply. For the reasons that follow, I deny Reebel's motion.

## II. BACKGROUND

Reebel has exhibited a sexual interest in minor girls. He explored this prurient interest on social media, including on Snapchat and through chat-based dating apps called MeetMe and Meet4U. The government charged Reebel with violations of 18 U.S.C. § 2251(a) and 18 U.S.C. § 2422(b) based on chats that took place between October 10, 2020 and October 15, 2020. (*See* Doc. No. 35 at 1-2). At trial, the government relied primarily on records of these chats introduced through live testimony.

In October of 2020, Reebel operated a Meet4U profile labeled "Older dude, 48" which contained a status that read: "I'm very attracted to girls that are a lot younger than me so don't be shy. Hit me up, okay. I'm down for anything. And I do mean anything." (Doc. No. 105 at 54). Reebel's profile located him in Toledo, Ohio. (*Id.* at 57). On Sunday, October 11, 2020, Reebel began chatting with a user named "Emily." (*See id.*). Unbeknownst to him, "Emily" was actually an online covert employee of the Federal Bureau of Investigation. (*See id.* at 39, 46).

Reebel began by flattering "Emily," calling her "pretty" and complimenting her smile. (*Id.* at 59). "Emily" quickly identified herself as a 14-year-old girl. (*Id.*). But Reebel asked if "Emily" could "keep [him] a secret" because he was "still interested." (*Id.* at 59-60). "Emily" mentioned a former "boyfriend" who was 39, and Reebel declared he had "always wanted a girl as young as you." (*Id.* at 60). "Emily" shared she and this much older boyfriend had previously engaged in sexual intercourse; Reebel found this "hot" and said he "would want to do that too." (*Id.*).

Reebel asked for more details related to "Emily's" previous sexual encounters, including whether she was "on birth control," whether she "let him cum in you," and how quickly "Emily" had agreed to meet her former "boyfriend" in person. (*Id.* at 61). When Emily shared that this

2

"boyfriend" had cheated on her, Reebel attempted to reassure her, explaining, "[w]hen I'm with someone, I'm only with them unless you were to want a threesome or something . . . once our bodies connect as one, we belong to each other." (*Id.*). Soon after, Reebel expressed interest in meeting "Emily" in person: "I'd meet you whenever you['re] ready honey. I would love to spend more time in person." (*See* Doc. No. 105 at 62). He asked about her "schedule . . . during the week." (*Id.*).

"Emily" asked if Reebel "just" wanted to meet, or if he wanted to "do other stuff too." (*Id.*). Reebel replied carefully: "We can meet and see how it goes, and if it goes good, we can do other stuff if you're feeling up to it and want to." (*Id.*). But he quickly clarified the "other stuff" he had in mind. When "Emily" stated her "one rule" for a meetup was that she did not want to engage in anal sex, Reebel agreed: "I'd rather have your pussy any day, hun, so we're good." (*Id.*).

Reebel had "one rule also:" both parties sending "a verification photo," because "it's just safest that way," prior to meeting up. (*Id.* at 63). So, the parties switched to Snapchat for a time and then switched back to Meet4U. (*See id.* at 65-68). By then, Reebel was proposing specifics: on October 12, 2020, he suggested that they meet up "this Thursday" (October 15, 2020) from 3:00pm to 9:00pm, when "Emily" would be finished with school but before her (fictional) mother would be home. (*See id.* at 69-70). Reebel had specific activities in mind: he wanted to "maybe fool around," which included "kiss[ing]" her "boobs," "finger[ing]" her to "get [her] really excited" and "turned on," "undress[ing]" her and "put[ting] [his] hands inside [her] clothes," and having "Emily" "suck [his] big cock." (*Id.* at 72-73). Then, Reebel asked, "[h]ow wet are you for me [] right now[?]" (*Id.* at 74). "Emily" answered "really wet," and Reebel replied, "I bet that's a sexy sight, babe . . . I['d] love to see babe." (*Id.*). He continued: "I wanna taste your wet teen pussy, babe . . . [l]et daddy slide his . . . long tongue inside you." (*Id.* at 74).

3

Then, Reebel asked Emily to "exchange fun pics" with him. (*See id.* at 76). "Emily" asked Reebel what kind of pictures he wanted. At first, Reebel equivocated: "anything babe." (*Id.*). Then, he did not: "[s]end me some pictures, sweetheart. I need something to get me hard tonight." (*Id.* at 77). "Emily" asked him for specifics, again, and Reebel obliged: "I want to see my baby girl in your panties and bra, and then I want to see you take off your panties and bra and be completely naked for daddy." (*Id.* at 77-78). "Emily" did not comply, and Reebel "went to sleep sad." (*Id.* at 79).

The next day, Reebel tried again. "Emily" told him she was "about to hop in the shower," and Reebel replied he "want[ed] to see a picture of that, of you in the shower." (Doc. No. 105 at 79). "Emily" demurred, so Reebel pivoted: "I'd much rather be playing with you [heart eye emoji] . . . what would you rather be doing, baby girl[?]" (*Id.* at 80). When "Emily" replied she "could be doing you too," Reebel wrote he wanted "Emily" to be "riding [his] cock" and that he "can't wait to feel how tight and small your pussy is gonna be on my fat cock." (*Id.* at 81). He added, "I can't wait to see the look of sheer pleasure on your face when you feel me squirt my sperm deep inside you. I really wanna make you orgasm when I'm inside you, honey." (*Id.*). He asked about "Emily's" preferences: whether she "liked it rough sometimes[,] or slow and romantic." (*Id.*). He insisted, "I care about you, baby girl . . . I want you to be happy and satisfied." (*Id.* at 81-82). He again expressed his desire to "taste [her] teen pussy." (*Id.*).

At that point, "Emily" sent a picture of "herself," clothed, to Reebel on Meet4U. (*Id.* at 83). Reebel was enthusiastic: "[o]h, my God, you're hot as fuck, babe. I love your body." (*Id.*). He wanted "more." (*Id.*). "Emily" sent a second clothed image taken from above, so the individual is looking up into the camera. (*Id.*). Reebel's response: "Mmmm, fuck, babe. Daddy can almost see down your shirt to those beautiful beautiful titties of yours." (*Id.*). The clothed picture made him want to "put [his] hands down [her] shirt and play with [her] tits." (*Id.*). He added, "[y]ou're making daddy hard keep up the good work sweetheart LOL." (*Id.*). When "Emily" replied, "I'm glad,"

4

Reebel continued, "I love being turned on by your young body. I can't wait for you to enjoy my body in real life . . . It's going to be really hot being inside you sweetheart." (*Id.* at 92).

Unprompted, Reebel switched back to the logistics of the anticipated meetup with "Emily." He wondered: "[S]o how is that going to work anyway? I know we're gonna have from like 3:00 p.m. until 9:00 p.m., but where are we going to have sex? I don't wanna just do it in my car. That's not necessarily very comfortable. I want to enjoy you, sweetheart." (*Id.*). But he also was "seriously hoping that we can be extremely discreet about this. I don't want to get caught, but I really do want to have your body. . . . I know you're going to love it." (*Id.* at 93). Reebel looked toward the future, too: "I want us to be boyfriend and girlfriend. I want us to have sex as much as we can." (*Id.*).

Acknowledging the two of them might be limited in what "we can do in public because people might look at us weird," he still "definitely . . . want[ed] to have sex on a regular basis." (*Id.*). In response, "Emily" asked where Reebel wanted to go, and Reebel suggested "get[ting] a room somewhere," "for the sake of time"—though he also floated the possibility of "driv[ing] . . . back to my house" if "Emily" could "stay a lot longer." (*Id.*).

At this point, Reebel asked "Emily" for a "specific photo" of her sticking out her tongue and holding up her pinky, preferably including a piece of paper with that day's date on it, because of "the whole safety issue." (*Id.* at 94). "Emily" demurred, and her communications with Reebel eventually ceased. (*Id.* at 94-95).

At the close of the government's case, Reebel orally moved for a judgment of acquittal under Rule 29. (*See* Doc. No. 106 at 69). I took his motion under advisement at that time. (*See id.* at 99). Reebel offered no evidence of his own, and after the close of all the evidence, Reebel renewed his motion and objected to the inclusion of part of the jury instruction for the offense of attempted sexual exploitation of a minor for the purpose of producing a visual depiction under § 2251(a). (*See*

5

Doc. No. 107 at 4, 54). I overruled this objection. (*See id.* at 7). The jury found Reebel guilty, and this briefing followed.

## III. STANDARD

Rule 29 provides that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "If the court reserves decision [on the motion], it must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b). Rule 29 permits a court to set aside a jury's guilty verdict and enter an acquittal. Fed. R. Crim. P. 29(c)(2). A court considering a Rule 29 motion, "while reviewing the record in the light most favorable to the prosecution, should grant relief only if it is found that upon the record evidence adduced at the trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *United States v. Abner*, 35 F.3d 251, 253 (6th Cir. 1994) (citing *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)).

## IV. ANALYSIS

Reebel's briefing only discusses his conviction for attempted production of child pornography under 18 U.S.C. § 2251(a). (*See* Doc. No. 102 at 11-12). But in his oral Rule 29 motion, he also argued for a judgment of acquittal on the coercion or enticement charge under 18 U.S.C. § 2422(b). (*See* Doc. No. 106 at 70). Because I reserved decision on the oral Rule 29 motion, I address Reebel's Rule 29 arguments for both counts here. *See* Fed. R. Crim. P. 29(b).

6

A. **18 U.S.C. § 2251(A) – ATTEMPTED PRODUCTION OF CHILD PORNOGRAPHY**

Reebel was charged with attempted sexual exploitation of a minor for the purpose of producing a visual depiction under § 2251(a). The statute reads, in relevant part:

> "Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided [in § 2251(e)]."

18 U.S.C. 2251(a).

A person is guilty of an "attempt" offense when they take a "substantial step" toward the completion of the offense. *United States v. Sims*, 708 F.3d 832, 835 (6th Cir. 2013). So, to convict Reebel of an attempted violation of § 2251(a), the government needed to "show two things beyond a reasonable doubt: first, that [Reebel] specifically intended to create child pornography . . . and second, that he took a substantial step towards the creation of child pornography." *Id.*

Reebel's challenge to the sufficiency of the evidence focuses on the way the jury instructions explain the requirement that the visual depiction involve "sexually explicit conduct." (*See* Doc. No. 106 at 2-3). A Rule 29 motion premised on faulty jury instructions can succeed "'only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial.'" *United States v. Morrison*, 594 F.3d 543, 546 (6th Cir. 2010) (quoting *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir. 1999)) (internal quotation marks omitted).

As relevant here, "sexually explicit conduct" includes "actual or simulated . . . lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A). In the Sixth Circuit, a jury may use a set of six factors, originating in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), to evaluate whether a depiction is, or would be, "lascivious:"

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

7

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*United States v. Daniels*, 653 F.3d 399, 407 (6th Cir. 2011) (citations omitted).

As the Sixth Circuit has emphasized, "[t]he *Dost* factors offer a framework to guide analysis, not a checklist or substitute for the statutory text." *United States v. Jakits*, 129 F.4th 314, 323 (6th Cir. 2025). Accordingly, "an image need not satisfy every factor to be deemed lascivious.'" *United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009) (quoting *United States v. Campbell*, 81 F. App'x 532, 536 (6th Cir. 2003)). The factors are "neither comprehensive nor necessarily applicable in every situation." *Brown*, 579 F.3d at 680 (6th Cir. 2009) (internal quotation marks and citations omitted). Instead, "[t]he inquiry will always be case-specific." *Id.*

The jury was instructed that Reebel was charged with "Attempting to Use, Persuade, Entice, or Coerce a Minor to Engage in Sexually Explicit Conduct to Produce a Visual Depiction." (Doc. No. 98 at 19). The instructions stated:

This charge has two elements:

[] First: That the defendant intended to commit the crime of Using, Persuading, Enticing or Coercing a Minor to Engage in Sexually Explicit Conduct to Produce a Visual Depiction.

[] Second: That the defendant did some overt act that was a substantial step towards committing that crime.

[] Merely preparing to commit a crime is not a substantial step. The defendant's conduct must go beyond mere preparation, and must strongly confirm that he intended to use, persuade, entice or coerce a minor to engage in sexually explicit conduct to produce a visual depiction. But the government does not have to prove that the defendant did everything except the last act necessary to complete the crime.

8

> A substantial step beyond mere preparation is enough. Relatedly, the government is not required to prove any sexually explicit conduct actually occurred.

(*Id.* at 19-20).

The instructions further explained the term "lascivious exhibition:" "Not every exposure of the genitals or pubic area constitutes lascivious exhibition. Whether a picture or image of the genitals or pubic area constitutes such a lascivious exhibition requires a consideration of the overall content of the material." (*Id.* at 21). The instructions listed the *Dost* factors, and then reiterated: "Of course, this list is not exhaustive, and an image need not satisfy any single factor to be deemed lascivious. Instead, you must determine whether the visual depiction is lascivious based on its overall content." (*Id.* at 22).

Reebel argues an "ambiguity" in the portion of the jury instructions explaining the meaning of the phrase "lascivious exhibition" allowed the jury to erroneously conclude he attempted to solicit an image containing sexually explicit conduct. (Doc. No. 102 at 2; *see* Doc. No. 98 at 21). He points out that the sixth *Dost* factor, as listed in the jury instructions, uses the "passive voice," ("is intended or designed") and he argues this left the jury with no guidance about "whose intent or design" was at issue, because no image existed for the jury to evaluate. (Doc. No. 102 at 6). Reebel contends this allowed the jury to convict him based on "the possessor's intent or design in possessing the image" alone, which he characterizes as an absurd and legally untenable outcome. (*See id.* at 10).

I am not persuaded by this argument for several reasons. To start, Reebel was not on trial for "possession" of child pornography, or for a completed "production of child pornography" offense under § 2251(a). Instead, Reebel was tried for, and convicted of, *attempting* to produce child pornography based on his solicitation of photographs from a federal agent who held herself out as a 14-year-old girl named "Emily." The jury instructions stated Reebel was on trial for this attempt offense, and the instructions did not suggest he was charged with possession of child pornography

9

or the actual, completed production of child pornography under 18 U.S.C. § 2251(a). (*See* Doc. No. 98 at 19-20).

As a result, it was "not necessary for the Government to prove that [visual depictions] [Reebel] created were lascivious, only that he had the specific intent to create" such a visual depiction. *United States v. Vanderwal*, 533 F. App'x 498, 501 (6th Cir. 2013). Reebel's apparent concern he was convicted based on the intent of a fictional "possessor" of child pornography is therefore misplaced.

More importantly, the jury instructions adequately explain "whose intent" is at issue. (Doc. No. 102 at 6). Reebel's argument focuses on the definition of "lascivious exhibition" in isolation—but the jury instructions must be "viewed as a whole." *Morrison*, 594 F.3d at 546 (quoting *Harrod*, 168 F.3d at 892 (6th Cir. 1999)) (internal quotation marks omitted). The instructions tell the jury that they cannot find Reebel guilty for a violation of § 2251(a) unless the government proves, beyond a reasonable doubt, that "*the defendant intended*" "to employ, use, persuade, induce, entire, or coerce a minor . . . to engage in sexually explicit conduct," including the "lascivious exhibition of the genitals or public area," "for the purpose of producing a visual depiction of such conduct." (Doc. No. 98 at 16-19) (emphasis added). In context, the definition of "lascivious exhibition" informed the jury's evaluation of whether Reebel intended that the photograph he solicited from "Emily" "would have lasciviously exhibited" a minor's genitals or pubic area. *Jakits*, 129 F.4th at 326.

In all, therefore, the jury was instructed that they could not find Reebel guilty unless they found, beyond a reasonable doubt, that he "'specifically intended' to create a lascivious image." *Jakits*, 129 F.4th at 325. The jury was asked to determine whether Reebel "intended" for a "visual depiction" he solicited from "Emily" to contain an "exposure" of the genitals or pubic area constituting "lascivious exhibition," including whether Reebel "intended" that the image "elicit a sexual response in the viewer"—namely, Reebel himself. (Doc. No. 98 at 21). Because the jury

10

instructions accurately stated the legal standard for an attempt offense under § 2251(a), I reject Reebel's argument that erroneous jury instructions entitle him to a judgment of acquittal on Count 1.

Reebel also argues the jury impermissibly convicted him by "piling inference on inference" and reaching a speculative verdict not supported by the evidence. (Doc. No. 102 at 9) (quoting *United States v. Summers*, 414 F.3d 1287, 1294 (10th Cir. 2005)). He asserts that "[b]ecause Mr. Reebel did not request a photo that necessarily constituted 'sexually explicit conduct' . . . the jury was left to infer that the photo he requested contained an 'exhibition' or 'exposure' of the genitals," followed by a separate inference that such an exhibition was "lascivious." (Doc. No. 102 at 9).

But at this stage, I must consider the evidence in the light most favorable to the government. *See Abner*, 35 F.3d at 253 (internal citation omitted). "'[T]he defendant's objective conduct, taken as a whole'[] may be used to prove intent." *Vanderwal*, 533 F. App'x at 502 (quoting *United States v. Pennell*, 737 F.2d 521, 525 (6th Cir. 1984)). And "circumstantial evidence alone may sustain a conviction" for attempted production of child pornography. *Jakits*, 129 F.4th at 326. Viewing the record with these principles in mind, there was enough evidence for a rational juror to conclude, beyond a reasonable doubt, that Reebel specifically intended for "Emily" to send him a photo containing a lascivious exhibition of the genitals or pubic area.

The government presented evidence Reebel asked for such a photo at least twice: first when he requested a photograph of "Emily" "completely naked," and second when he requested a photograph of "Emily" "in the shower." (Doc. No. 105 at 77-79). Reebel asked for these visual depictions immediately before or after describing various sex acts he wanted to perform with "Emily." In particular, Reebel made several statements about "Emily's" genitals. He said he would "love to see" how "wet" her vaginal area was, he twice expressed a desire to perform cunnilingus on her "teen pussy," and he described, in some detail, the vaginally penetrative sex in which he wanted to engage with "Emily."

11

In short, "Emily's" genitalia—especially her vaginal area—was an obvious locus of "prurient" interest for Reebel. *United States v. Guy*, 708 F. App'x 249, 256 (6th Cir. 2017) (affirming a conviction for attempted production of child pornography where a photograph that was not child pornography "bore an obscene caption that demonstrated [the defendant's] prurient intent"). Because Reebel requested these photographs in the middle of a conversation where he repeatedly expressed a desire to perform explicit sex acts with "Emily," a reasonable juror could conclude that when Reebel "asked specifically for a naked picture," including a shower photograph, he intended that "Emily" send him one featuring a lascivious display of her vagina or pubic area. *Jakits*, 129 F.4th at 325. Therefore, there was sufficient evidence for the jury to conclude, beyond a reasonable doubt, that Reebel "specifically intended to create child pornography" in the form of a photograph depicting a minor engaged in sexually explicit conduct, "and second, that he took a substantial step towards the creation of child pornography" when he asked "Emily" to send him such a photograph. *Sims*, 708 F.3d at 835. I reject Reebel's second argument for a judgment of acquittal on Count 1.

Finally, Reebel invokes the rule of lenity, arguing that because "the jury instructions does not make clear whose intent or design is at issue," the instruction is ambiguous and he should not have been convicted. (Doc. No. 102 at 11). But the rule of lenity "'applies only when, after consulting traditional canons of *statutory* construction, [a court is] left with an ambiguous *statute*.'" *Shular v. United States*, 589 U.S. 154, 165 (2020) (emphasis added). Reebel points to no purported ambiguity in § 2251(a), and he does not attempt to explain how any statutory ambiguity, if resolved in his favor, would require his acquittal. (*See* Doc. No. 102 at 11). Moreover, as I explained above, the jury instructions regarding intent for Reebel's attempted production of child pornography offense are not ambiguous.

For these reasons, I conclude Reebel is not entitled to a judgment of acquittal under Federal Rule of Criminal Procedure 29 for his attempted production of child pornography conviction under § 2251(a).

### B.      18 U.S.C. § 2422(B) – COERCION OR ENTICEMENT OF A MINOR

Under § 2422(b), a person who "knowingly persuades, induces, entices, or coerces" a minor, "or attempts to do so," is subject to carceral punishment. 18 U.S.C. § 2422(b). Reebel was convicted after being charged with violating this statute, or attempting to do so. (*See* Doc. No. 35 at 2; Doc. No. 98 at 23-24). Relying primarily on *United States v. Gladish*, 536 F.3d 646 (7th Cir. 2008), Reebel argued a judgment of acquittal should be entered as to Count 2 because he did not take a substantial step toward the completion of a coercion or enticement offense. (*See* Doc. No. 106 at 70-72). He did not further develop that argument in his written Rule 29 motion.

After reviewing the evidence developed at trial, I conclude there was sufficient evidence to convict Reebel for this offense. In *United States v. Bailey*, 228 F.3d 637, 639-40 (6th Cir. 2000), the Sixth Circuit upheld a conviction under 18 U.S.C. § 2422(b) where the defendant "contacted [a minor], urged her to meet him, and used graphic language to describe how he wanted to perform oral sex on her." Reebel did at least as much here.

He suggested he and "Emily" meet up between 3:00pm and 9:00pm the Thursday of the week the two were chatting, and he weighed the relative merits of sexual intercourse in a car and in a hotel room. He described, in explicit detail, acts of fondling, cunnilingus, fellatio, and vaginal sex in which he wanted to engage with "Emily." He promised he would abide by "Emily's" distaste for anal sex, and he trumpeted his desire to make her feel good and cause her to orgasm. When "Emily" sent him clothed photos, he told her she should wear clothing like that when they met so he could fondle her breasts, and he repeatedly expressed the desire to have sex with her in person.

13

Consistent with the evidence sufficient to uphold the conviction in *Bailey*, Reebel proposed a specific day and time, enthusiastically discussed specific sexual acts he wished to perform with "Emily," and tried to soothe her expressed concerns about the encounter by acknowledging her preferences and asserting his interest in making her feel good.  *Gladish*, which is not a binding case in this Circuit, does not counsel otherwise, since it acknowledged a conviction under § 2422(b) can be sustained where a defendant engages in "more than . . . explicit sex talk" by itself.  536 F.3d at 649 (citing *Bailey*, 228 F.3d at 639-40).  Therefore, the government presented sufficient evidence from which the jury could conclude Reebel "knowingly persuade[d], induce[d], entice[d], or coerce[d]" a minor, or attempted to do so, in violation of the statute.  18 U.S.C. § 2422(b).  I deny Reebel's motion for a judgment of acquittal on Count 2.

## V.  CONCLUSION

For the reasons above, I deny Reebel's oral and written motions for a judgment of acquittal under Rule 29.  (Doc. No. 106 at 70; Doc. No. 102).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge